IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYNELL SIMS and DONNA GUILLOT,<br>  individually and on behalf of others<br>  similarly situated; <br><br>     Plaintiffs<br><br>  v.<br><br>3705 IBERVILLE, LLC d/b/a.<br>THE BLIND PELICAN and<br>STEVEN SEEBER;<br><br>     Defendants | Civil Action No. _____<br><br><br><br>COLLECTIVE ACTION |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Raynell Sims and Donna Guillot, through undersigned counsel, hereby allege as follows:

## THE PARTIES

1.  Raynell Sims is an individual of the full age of majority and residing within this District.

2.  Donna Guillot is an individual of the full age of majority and residing within this District.

3.  Defendant 3705 Iberville, LLC, is a Louisiana limited liability company with its registered domicile located at 1628 St. Charles Avenue, New Orleans, Louisiana.

4   Defendant Steven Seeber is an individual of the full age of majority and an owner, registered agent, and officer of 3705 Iberville, LLC.  Seeber manages and supervises the company on a day to day basis.  On information and belief, Seeber resides within this District.

5. Defendants operate a restaurant under the trade name of The Blind Pelican, which is located at 1628 St. Charles Avenue, New Orleans, Louisiana.

## JURISDICTION AND VENUE

6. This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA") and Louisiana state law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Both Defendants reside within this District, and a substantial part of the events or omissions giving rise to this claim occurred within this District.  Venue is therefore proper in this Court.  28 U.S.C. § 1391(b).

8. Defendants are engaged in commerce pursuant to 29 U.S.C. § 206(s).

9. The Blind Pelican's annual volume of sales made and business done has exceeded $500,000 during each year within the relevant statute of limitations.

10. Defendants have a common business purpose and exercise unified operation and common control over The Blind Pelican.  They therefore qualify as an enterprise pursuant to 29 U.S.C. § 203(r).

11. Defendant Seeber is a member, officer, and registered agent of 3705 Iberville, LLC, and acts, or has the power to act, on behalf of the company.

12. Seeber exercises close supervisory authority over The Blind Pelican's employees and operations on a day-to-day basis, and makes all important decisions on behalf of the restaurant.

13. Seeber is responsible for setting employee's rates of pay, determining how much money The Blind Pelican's employees will be paid in a given pay period, deciding whether to

4846-9767-5338, v. 1

pay overtime, and deciding how tips will be paid and distributed.

14. Seeber sets all relevant company-wide pay practices and policies.

## FACTUAL ALLEGATIONS

15. Plaintiffs are both former employees of Defendants.

16. Plaintiff Raynell Sims worked at The Blind Pelican as an oyster shucker. He often worked from 9 to 10 am in the morning until 9 to 10 pm at night, and sometimes later, for six days a week.

17. Seeber strictly forbids workers at The Blind Pelican from taking meal periods or rest breaks. Seeber would berate Sims for attempting to take a short break or eat. As a result, Sims frequently worked a full 12-hour shift without any break.

18. Sims' pay rate was highly variable and would change based on Seeber's personal whim. Sometimes Sims would be paid $10 an hour, sometimes $12. Sims never knew what his pay rate would be until he received his check, and Seeber sometimes decided to retroactively reduce Sims' pay rate after the workweek had already passed.

19. Sims was not paid for all hours he actually worked.

20. Although The Blind Pelican has a computerized timekeeping system, employees were not permitted to access that computer. Only Seeber and the restaurant general manager had access. Employees were instructed to tell Seeber or the restaurant general manager when they arrived and left every day.

21. Seeber and the general manager were often too busy to stop and punch in a certain individual right at that moment. As a result, they sometimes "estimated" the time that Sims and the other employees worked – almost always to the employee's detriment.

22. Even when Sims' time entries were entered accurately, Defendants purposefully

reduced Sims' recorded hours from the computer system in order to save on labor costs. This was particularly common if Sims had worked more than 40 hours in a week, as his hours would be reduced to avoid overtime pay.

23. On other occasions, Defendants would "even out" Plaintiffs' hours across workweeks to avoid paying overtime in a given week. Because The Blind Pelican employees were paid on a biweekly basis, Defendants could remove hours from one workweek and place them on another to avoid paying for more than 40 hours in one single workweek.

24. Checks would often be delayed and were not paid on the regular payday. As a result, Sims would have to wait for money he had already rightfully earned.

25. By May 2017, Sims had grown tired of Seeber's constant underpayment and non-payment of wages. He directly asked Seeber about his failure to pay all the wages and overtime he was owed, and requested that he be paid all the money he was due.

26. Seeber responded by angrily shouting "fuck off" and firing Sims on the spot.

27. Sims did not receive his final paycheck on the next regular payday or within 15 days of his termination.

28. Plaintiff Donna Guillot worked at the Blind Pelican as a server/waitress. She usually worked from 10 am until 9 pm.

29. Like Sims, Guillot was regularly underpaid and had her hours wrongfully reduced.

30. In theory, Guillot was paid $2.13 per hour, plus tips. In reality, it is impossible to determine how much Guilot was paid per hour in any given workweek based on the pay documents which the Defendants provided to her.

31. The figures on Guillot's paystubs appear arbitrary and inconsistent from pay period to pay period, and sometimes even within the same pay period.

32. During 2016 alone, Defendants went through three separate payroll services.

33. Guillot's pay often did not reflect all the hours she actually worked during a pay period. As with Sims, her time was either entered inaccurately or reduced after the fact, resulting in underpayment.

34. Guillot was also required to work without breaks, even when she was pregnant. On one occasion Guillot, while pregnant, attempted to take a short break to eat a sandwich she had taken from home. Seeber saw her open the sandwich and loudly berated her.

35. As a result of working long hours without eating or taking a break, Guillot fell and injured herself on the job, and was required to temporarily go on bed rest to protect her unborn child.

36. Defendants also illegally deducted from Guillot's tips.

37. Guillot's pay records reflect that a portion of her tips is deducted to tip out the bartenders, food runners, and bussers.

38. However, the bartenders, food runners, and bussers never received any portion of these tips.

39. On information and belief, Defendants simply kept the deducted portion of the servers' tips for themselves.

40. All employees at The Blind Pelican are subject to a weekly $5, non-optional, paycheck deduction for "drinks."

41. This deduction is supposedly taken so that employees could drink soft drinks during their shifts. However, the employees were often forbidden from drinking any soft drinks while on the job and were told to drink tap water instead.

42. Because the deduction was mandatory, employees had the $5 deducted whether

they wanted the soft drinks or not. Many employees were forced to pay $5 a week without receiving any benefit in return.

## COLLECTIVE ACTION ALLEGATIONS

43. Plaintiffs bring this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former similarly situated employees who worked for Defendants within three years of the date of filing this complaint.

44. The allegations set forth above are not unique to Sims and Guillot. Undersigned counsel has spoken with several other employees and former employees of The Blind Pelicans, all of whom have recounted nearly identical claims – their hours are reduced, their pay rates are subject to after-the-fact reduction without warning, their tips are taken away, and their overtime is not paid.

45. Pursuant to § 216(b), these employees and former employees' consents to join the instant lawsuit are being filed contemporaneously with this complaint. Plaintiffs expect that many more individuals will wish to join this lawsuit after notice is disseminated to the members of the collective.

46. Plaintiffs seek certification of two subcollectives. The first proposed subcollective includes tipped employees, as defined by 29 U.S.C. § 203(t), who were paid less than the statutory minimum wage of $7.25 an hour. The second subcollective includes employees who were paid at least $7.25 an hour and who did not receive tips.

47. The first subcollective, consisting of tipped employees, is defined as follows:

> All individuals employed by 3705 Iberville LLC, d/b/a The Blind Pelican, Inc. or Steven Seeber at any time between June 16, 2014 to the date of judgment in this action, who were eligible to receive tips, and whose tips were subject to deduction by The Blind Pelican.

This subcollective will be referred to as the "Tipped Employee Subcollective."

48. The second subcollective, consisting of employees who did not receive tips, is defined as follows:

> All individuals employed by 3705 Iberville LLC, d/b/a The Blind Pelican, Inc. or Steven Seeber at any time between June 16, 2014 to the date of judgment in this action, and who were paid on an hourly basis without being eligible for tips.

This subcollective will be referred to as the "Hourly Employee Subcollective."

49. The members of the Tipped Employee Subcollective are similarly situated in that they have all been underpaid their wages, denied overtime premiums despite working more than 40 hours in a week, and had improper deductions taken from their tips.

50. The members of the Hourly Employee Subcollective are similarly situated in that they have all been underpaid their wages and denied overtime premiums despite working more than 40 hours in a week.

51. Plaintiff Raynell Sims is an adequate representative of the Hourly Employee Subcollective, in that he has suffered the same harm as the remaining members of that Subcollective.

52. Plaintiff Donna Guillot is an adequate representative of the Tipped Employee Subcollective, in that she has suffered the same harm as the remaining members of that Subcollective.

53. Defendants have employment and payroll records sufficient to identify all potential members of both Subcollectives.

## FIRST CAUSE OF ACTION

## FAILURE TO PAY OVERTIME (29 U.S.C. § 207)

54. Plaintiffs hereby reallege and reincorporate paragraphs 1-53.

55.     The FLSA requires that employers pay nonexempt employees at a rate of at least one and one-half times their regular rate for all hours over forty in a workweek.

56.     Defendants have conspired to avoid paying overtime premiums to Plaintiffs and the members of the Subcollectives.  Among other unlawful tactics, they have failed to accurately record all hours worked, wrongfully reduced recorded hours, and unilaterally reduced hourly pay without giving prior warning to the employees.

57.     Defendants' nonpayment of overtime and other wages owed was willful and not based in a good faith belief that their conduct was in accordance with the law.

58.     Defendants' unlawful wage payment practices have caused damage to Plaintiffs and the members of the Subcollectives in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## FAILURE TO PAY MINIMUM WAGE (29 U.S.C. § 206)

59.     Plaintiff hereby reallege and reincorporate Paragraphs 1-58.

60.     The FLSA requires employers to pay employees a minimum wage of at least $7.25 per hour.  Pursuant to 29 U.S.C. § 203(t), tipped employees may be paid $2.13 per hour provided that their tips raise their effective hourly rate to at least $7.25.

61.     An employer may not deduct from the tips earned by a tipped employee unless such deductions are made pursuant to a lawfully constituted tip pool.  If the tip pool is not valid for any reason, the tipped employee exemption does not apply and the individual must be paid at least $7.25 per hour.  *Montano v. Montrose Restaurant Associates*, 800 F.3d 186 (5th Cir. 2015).

62.     Defendants have conspired to create a phony "tip pool" which deducts from the tips earned by servers and other tipped employees, but does not pay any portion of those tips to the bartenders, bussers and food runners. Instead, Defendants keep this money for their own use.

63. Defendants' wrongful deductions from tipped employees constitute a violation of the minimum wage provision of the FLSA.

64. As a result of Defendants' unlawful practices, Plaintiffs and the members of the collective have suffered damages to be proven at trial.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT/QUANTUM MERUIT

65. Plaintiff hereby reallege and reincorporate paragraphs 1-64.

66. Defendants have not paid Plaintiff and the other members of the collective for all hours worked under forty in a workweek, known as "straight time" or "gap time."

67. Instead, Defendants have reduced the employees' recorded hours and falsified time records to prevent employees from receiving the monies they have rightfully earned.

68. Payment for those hours worked was duly earned by Plaintiff and the members of the collective, but has not been paid. Defendants' failure to pay for this labor has unjustly enriched them and impoverished Plaintiffs and the members of the collective.

69. There is no justification for Defendants' unlawful actions, and Plaintiffs have no other adequate remedy at law for Defendants' nonpayment of the straight time or gap time hours.

70. Defendants' unlawful actions have injured Plaintiffs and the members of the collective in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## LOUISIANA WAGE PAYMENT ACT (La. Rev. Stat. §§ 23:631-632)

71. Plaintiffs hereby reallege and reincorporate paragraphs 1 through 70.

72. The Louisiana Wage Payment Act requires that employers pay employees their final paycheck by the next regularly scheduled pay date, or 15 days after the end of their

employment, whichever comes first.

73. After his termination, Plaintiff Sims was not paid his final paycheck within the time periods required by the Louisiana Wage Payment Act. Although he later received a partial payment from Defendants, he has still not been paid in full for all wages due and owing.

74. Other members of the Subcollectives who are former employees were likewise not timely paid their final paychecks as required by law and, in several cases, have not been paid their final paychecks at all.

75. Defendants' actions violate the Louisiana Wage Payment Act, La. Rev. Stat. §§ 23:631-632, and Plaintiff and the members of the collective are entitled to continuing penalty wages along with reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS (La. Rev. Stat. § 23:635)

76. Plaintiffs hereby reallege and reincorporate paragraphs 1-75.

77. Plaintiff and the other members of the collective are subject to paycheck deductions and fines at Defendants' sole discretion.

78. La. Rev. Stat. § 23:635 states the imposition of fines against employees is unlawful, unless the employee willfully or negligently damages the employer's goods, willfully or negligently damages or breaks the employer's property, or if the employee is convicted or has pled guilty to the crime of theft of employer funds.

79. Defendants' deductions do not fit into any of the narrow exceptions of La. Rev. Stat. § 23:635 and therefore constitute unlawful fines under Louisiana law.

80. Plaintiffs and the other members of the collective have therefore suffered damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## FLSA RETALIATION (29 U.S.C. § 215)

## ON BEHALF OF RAYNELL SIMS ONLY

81. Plaintiffs hereby reallage and reincorporate paragraphs 1-80.

82. The FLSA prohibits any employer from retaliating against an employee who files a lawsuit seeking payment of wages or otherwise asserts his rights under the FLSA.

83. Plaintiff Sims engaged in protected activity under the FLSA by demanding payment of his unpaid wages from Seeber.

84. Defendants responded by immediately terminating Sims.

85. Defendants fired Sims because he requested payment of his earned wages and overtime.

86. As a result of this termination, Sims suffered severe and immediate financial hardship. He and his young family lost their apartment and were forced to sleep in their car or in motels.

87. The retaliation also caused significant emotional stress to Sims and his fiancee, Candy Jefferson (who is also a member of the collective).

88. As a result of this unlawful termination, Plaintiff Sims has suffered injury in an amount to be proven at trial.

## JURY DEMAND

89. Plaintiffs hereby request a trial by jury on all claims so triable.

WHEREFORE, Plaintiffs and the members of the collective respectfully pray for judgment as follows:

4846-9767-5338, v. 1

a. That this case be allowed to proceed as a collective action with subcollectives as defined above;

b. For an award of all unpaid wages and overtime according to proof;

c. For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

d. For an award of reasonable attorney's fees;

e. For penalties under the Louisiana Wage Payment Act;

f. For costs of suit;

g. For injunctive and equitable relief as provided by law;

h. For an award of compensatory and other general damages to be proven at trial;

i. For pre and post-judgment interest; and

j. For such other and further relief as may be just and proper.

Respectfully Submitted,

_____/s Charles J. Stiegler_____
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite 104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com

Justin Chopin, # 31100
CHOPIN LAW FIRM LLC
650 Poydras St., Suite 1550
New Orleans, La. 70130
(504) 229-6681 (telephone)
(504) 324-0640 (fax)
Justin@ChopinLawFirm.com